Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3597 | **DATE** | 3/13/2000 |
| **CASE TITLE** | Great Neck Capital vs. Richard A. Drexler, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The plaintiffs' consolidated amended class action complaint is dismissed without prejudice. The plaintiffs' have to April 13, 2000 to file a second amended complaint. Ruling date stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | Document Number |
| | No notices required. | 3-15-00 date docketed | 29 |
| | Notices mailed by judge's staff. | docketing deputy initials | |
| | Notified counsel by telephone. | date mailed notice | |
| ✓ | Docketing to mail notices. | mailing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |

| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office |
|---|---|---|

FILED

MAR 13 2000

Judge Harry D. Leinenweber
U. S. District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE ALLIED PRODUCTS CORP., INC. SECURITIES LITIGATION,

Case No. 99 C 3597

Judge Harry D. Leinenweber

DOCKETED
MAR 15 2000

MEMORANDUM OPINION AND ORDER

Plaintiffs, a putative class of investors who purchased common shares of Allied Products, Corp. ("Allied"), bring this suit against Allied and various individual officers and directors for securities fraud. Before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).

BACKGROUND

The following facts are drawn from Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint") which, for purposes of this motion to dismiss, the Court accepts as true. Travel All Over the World v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). Plaintiffs are individuals who purchased common shares of Allied during the period February 6, 1997 through March 11, 1999. Allied is a Delaware corporation in the business of manufacturing agricultural and industrial machinery. In the years 1996 through 1998, Verson, a division of Allied, entered into contracts for industrial machinery with each of the major automakers: Chrysler in 1996, Ford in 1997, and General Motors in 1998. Each of these contracts involved custom design specifications and were expected to take 18 to 24 months to complete. During the class period, the



profits on these contracts were calculated on a "percentage of completion" basis, which allows the firm to recognize sales, costs, and profits over the life-time of a contract. According to Generally Accepted Accounting Principles ("GAAP"), the percentage of completion accounting is appropriate on substantial projects lasting longer than a year where reasonably dependable estimates of progress toward completion, revenues, and costs can be made.

The orders from the automakers, however, proved too taxing for Verson's existing production capabilities. Verson struggled with capacity limitations, antiquated machinery, malfunctions, bottlenecking, and cost overruns. During the class period, Allied made periodic statements referring to cost overruns at Verson due to increased overtime and costs associated with identifying and improving manufacturing ability. Beginning in 1998, however, Allied begin to report decreasing profit margins at Verson and in late 1998, announced that it would take an additional $16 million charge against its 1998 third quarter earnings to account for revised cost estimates on the contracts with the automakers. Within the class period, the price of Allied stock decreased from around $20 per share to around $4 per share.

However, according to Plaintiffs, Allied's periodic disclosures regarding increased costs at Verson, including its disclosure in late 1998 of the additional $16 million charge, were insufficiently candid of what was really happening at Verson. Plaintiffs allege that Allied knew but failed to disclose that they

had inadequate internal controls for estimating and calculating costs on the contracts with the automakers. Instead, Allied continued to report inflated earnings at Verson on a percentage of completion basis without the ability to make dependable estimates. Allied also indicated that production problems were identified - when they were not - and projected continued growth without any reasonable basis. In addition, Plaintiffs allege that all the financial statements issued during the class period were further misleading because Allied failed to include additional employee compensation expenses due to the exercise of certain stock options.

The truth regarding the financial state of Allied finally emerged on March 11, 1999 when it announced that the company would restate its net income for the years 1996, 1997 and a portion of 1998. Allied reported that the restatements were necessary to take into account previously omitted employee compensation expenses as well as revised profit margin calculations for Verson. Verson's production troubles with respect to the automakers' contracts had caused significant impact on the profitability of Verson's entire operation, a factor that had not been adequately accounted for in previous calculations. The news allegedly shocked the market as the price of Allied stock fell from $4.438 to $3.688.

**DISCUSSION**

Plaintiffs' Complaint asserts two counts: Count I alleges securities fraud against all defendants pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC

Rule 10b-5, 17 C.F.R. § 240.10b-5; Count II alleges a claim against the individual defendants pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). Because Plaintiffs' Section 20(a) claim is premised entirely on their Section 10(b) claim, the parties agree that survival of both claims depend upon whether Plaintiffs sufficiently allege a Section 10(b) claim.

To state a Section 10(b) claim, a plaintiff must allege that the defendant (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries. In re Healthcare Compare Corp. Sec. Litig., 75 F.3d 276, 280 (7th Cir. 1996). In this case, the alleged misstatements or omissions fall into two categories: (1) the failure to properly account for certain compensation expenses associated with Allied's employee stock option plan; and (2) the inflation of Verson's earnings figures by use of an improper accounting method. The Court finds dismissal of the present complaint appropriate because the Plaintiffs fail to sufficiently allege scienter with respect to either of the alleged misrepresentations or omissions.

**Pleading Standard Under the Private Securities Litigation Reform Act**

Scienter under § 10(b) is either the "intent to deceive, manipulate or defraud," or the "reckless disregard for the truth of

the material asserted." Danis v. USN Communications, Inc., 73 F. Supp. 2d 923, 938 (N.D. Ill. 1999)(citing, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976) and Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1044 (7th Cir. 1977)); Miller v. Material Sciences Corp., 9 F. Supp. 2d 925, 927 (N.D. Ill. 1998); Rehm v. Eagle Financing Corp., 954 F. Supp. 1246, 1252 (N.D. Ill. 1997). The pleading standard for scienter in securities fraud cases is governed by the Private Securities Litigation Reform Act (the "PSLRA"). The PSLRA strengthened existing pleading standards by requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The parties, citing conflicting case law, are in disagreement as to the precise impact of the PSLRA on detailed nuances of pleading a securities fraud claim: whether a plaintiff could continue to rely upon the "group published" theory; whether confidential sources must be revealed; whether allegations of motive and opportunity alone continue to be sufficient to show scienter; etc. But rather than set forth generally applicable exclusionary rules with respect to each technical detail of pleading, this Court finds persuasive the approach of courts that have applied the PSLRA on a case by case basis in accordance with its plain terms, without recourse to fixed formalistic categories. See e.g., Danis, 73 F. Supp. 2d at 937 (. . ."the PSLRA's focus is on whether plaintiffs have plead with particularity facts

establishing a 'strong inference' that the defendants acted with scienter. The types of facts they choose to use in this pursuit. . .are of no consequence as long as those facts establish the strong inference of scienter"); Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp., 2 F. Supp. 2d 1345, 1359 (D. Colo. 1998)(". . .the Court finds such a case-by-case approach most appropriate in light of the plain language and legislative history of the Reform Act"); In re Health Management, Inc. Sec. Litig., 970 F. Supp. 192, 201 (E.D.N.Y. 1997)("Congress intended the courts to determine whether a plaintiff has pled a 'strong inference' of fraudulent intent, by examining the particular allegations of each case").

The language of the PSLRA is clear: in order to survive a motion to dismiss, the totality of the complaint must demonstrate a "strong inference" that the defendant acted, at a minimum, recklessly. Id. at 938; Rehm v. Eagle Finance Corp., 954 F. Supp. 1246, 1253 (N.D. Ill. 1997). The provision does not categorize the types of facts a plaintiff may allege or not allege, but rather on whether a particular set of facts as a whole are sufficient to raise the requisite "strong inference." Danis, 73 F. Supp. 2d at 938. This is a case by case determination, and in this case, the Plaintiffs fail to meet the requisite standard.

**Compensation Expenses Claim**

The Court first addresses Plaintiffs' contention with respect to the omitted compensation expenses. The present complaint

contains insufficient facts to support Plaintiff's assertion that the omission of additional compensation expenses from certain financial statements was fraudulent as opposed to simply mistaken. See DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990)(a securities fraud claim must "disclose circumstances that might separate fraud from the benefit of hindsight.")

Plaintiffs argue that Allied's failure in properly accounting for compensation expenses was "so obvious that the defendants must have been aware of it." (Plf. Resp. at 29). Yet Plaintiffs do not point to any specific facts in the complaint that would support the inference of obviousness other than the fact that defendants occupied control positions within Allied and that the omission of the compensation expenses was a violation of GAAP. (Id. at 21-22). Such allegations, however, are not enough. See e.g., Rhem v. Eagle Finance Corp., 954 F. Supp. 1246, 1255 (N.D. Ill. 1997)("Allegations of a serious departure from GAAP are not themselves sufficient to give rise to an inference of scienter.") Under the PSLRA pleading regime, Plaintiffs must provide additional details allowing the Court to connect the dots in the chain of inference; after all, the PSLRA calls for a "strong inference." In re First Merchants Acceptance Corp. Sec. Litig., 97 C 2715, 1998 WL 781118, at *10 (N.D. Ill. Nov. 4, 1998)(holding that a GAAP violation may support a strong inference of scienter only when combined with other circumstances suggesting fraudulent intent)(citation omitted). Missing are facts suggesting, for

example, that the proper accounting of compensation expenses was so central or significant to Allied's operations that it would be incredible for the Defendants to claim that the 1999 restatement was due to innocent mistake. Compare Rhem, 954 F. Supp. at 1256. As presently alleged, however, claims of fraud relating to the omission of compensation expenses are properly dismissed.

**Inflated Earnings at Verson**

Plaintiffs also fail to raise a strong inference of scienter with respect to inflated earnings figures at Verson. Plaintiffs maintain that the magnitude and significance of the problems at Verson, coupled with the fact that Defendants attended meetings and received reports regarding the problems, indicate contemporaneous knowledge of the falsity of Allied's public statements. The Court finds otherwise.

The PSLRA requires the plaintiff to state with particularity the facts giving rise to a strong inference of scienter "with respect to each act or omission alleged. . . ." 15 U.S.C. § 78u-4(b)(2)(emphasis added). In this case, Plaintiffs allege misrepresentations or omissions in Allied's public statements spanning from February of 1997 through January of 1999. The complaint itself, however, suggests that the production problems at Verson may have unfolded slowly, throughout the Class period: the contracts with the automakers were acquired one at a time over three years (Chrysler in 1996, Ford in 1997, and GM in 1998), and each were expected to take anywhere from 18-24 months to fulfill.

(Cplt. ¶ 35). Therefore, in order to meet PSLRA's pleading requirement with respect to each alleged misrepresentation or omission, it is crucial that the Complaint be particular about what the Defendants knew and when.

But the Complaint avers only in general terms that the Defendants had contemporaneous knowledge of Verson's problems. Meetings were apparently held and memoranda were allegedly passed around without any indication of the time frame of such communications or their contents. (Cplt. ¶¶ 40-41). Plaintiffs assert that it was "simply common knowledge throughout the organization of cost overruns and lack of capacity necessary to complete the projects on time" without indicating when such problems became known and with respect to what project. (Id. at ¶ 39). Do the Plaintiffs suggest that Verson's capacity limitations were known prior to the signing of any of the large automaker contracts? Do the Plaintiffs suggest that such problems became known during the execution of the contracts? If so, which one? How immediately did the problems arise and to what extent?

The bottom line is that Plaintiffs fail to link each alleged fraudulent statement with particular facts that would indicate that the Defendants knew better at the time the statement was made. The lack of particularity with respect to what Defendants' knew and when is even more critical here where other traditional indicators of contemporaneous knowledge, such as unusual stock activity by the Defendants, are missing. Compare, In re Spyglass, Inc. Sec.

Litig., 99 C 512, 1999 WL 543197, at *7 (N.D. Ill. July 21, 1999)(finding that allegations of defendants' unusually active stock disposition shortly before the release of adverse information sufficient to raise strong inference of knowledge that prior statements made by defendants were false). As such, the present complaint is properly dismissed. This dismissal, however, is without prejudice. While the Defendants urge dismissal with prejudice, the Court is not convinced that the kind of deficiencies presently identified in the pleading are generally the type that are incurable.

## CONCLUSION

Accordingly, for the foregoing reasons, the Plaintiffs' Consolidated Amended Class Action Complaint is dismissed without prejudice. The Plaintiffs have thirty days to file a Second Amended Complaint.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: March 13, 2000